UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

56 MILBANK AVENUE, LLC

Debtor.

Case No. 15-_____

# DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Joel M. Friedberg, declares, under the penalty of perjury:

1. I am a Member of 56 Milbank Avenue, LLC, the above- captioned debtor and debtor-in-possession (the "Debtor"). I submit this declaration pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 1007-2 and 9077-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York. I have personal knowledge of the information set forth herein.

2. The Debtor owns the properties located at 56 Milbank Avenue, Greenwich, Connecticut (the "Properties"). The Debtor's principal place of business and its offices are located in White Plains, New York.

3. The Properties are two high-end town houses that the Debtor developed and is marketing for sale and/or lease. The Debtor believes that the value of the Properties greatly exceeds the value of its existing mortgage, however, a pending litigation by the Debtor's lender has deprived the Debtor of the ability to maximize of the value of the Properties. The Debtor believes that with the automatic stay, some breathing room, and the protections of the Bankruptcy Code, it can sell one or both of the townhouses in an orderly fashion and pay creditors in full on their allowed claims, with the possibility for a distribution to equity holders.

3060183-3

Conversely, without the benefit of the automatic stay, the lender, a loan to own vehicle which acquired the loan for the purpose of acquiring the Properties in foreclosure, will recover a significant and unwarranted windfall and receive value greatly in excess of its claims, to the detriment of all other stakeholders of the Debtor.

<u>The Mortgage and Loan Dispute</u>

4. The mortgage is currently the subject of a foreclosure action in Connecticut. The amount owed under the mortgage is in dispute, as explained below, but is in an amount of not less than $4,500,000. The Lender (as defined below) claims it is owed in excess of $5,300,000.

5. Preliminarily, it is important to highlight that the Debtor never missed a monthly payment under its Note. In fact, in January and February of 2014, the Lender sent back checks the Debtor paid (or re-issued checks to the Debtor after it received and deposited the Debtor's monthly payments) rather than apply them to the obligations owing. Thus while the Debtor has paid monthly interest to the Lender current until such time, it has not made payments since February 2014 as the checks were simply returned. The Debtor has lease commitments for one of its units through June 30, 2016 with rent at $17,500.00 per month. The tenant has a one year option to renew and the Debtor has a 90 day termination right after June 30, 2016.

6. On or around August 11, 2005, the Debtor executed a Commercial Note (the "Note") in the amount of $5,000,000.00 in favor of New Alliance Bank ("New Alliance"). To secure the indebtedness under the Note, the Debtor executed an Open Ended Convertible Construction to Permanent Loan Mortgage and Security Agreement (the "Construction to Permanent Mortgage"). The members of the Debtor executed personal guarantees for the Note.

7. In or about November 2013, First Niagara Bank, N.A., as successor by merger to New Alliance ("First Niagara"), commenced an action against Debtor and its members in the

2

Connecticut Superior Court for the judicial district of Stamford-Norwalk at Stamford. The case is pending under docket number FST-CV-13-6020370-S. The complaint alleges, among other things, that Debtor's members are liable under personal guarantees for the Note. The complaint seeks, among other things, foreclosure of the Construction to Permanent Mortgage. I refer to this case as the "Foreclosure Action."

8. On or about January 17, 2014, First Niagara moved to substitute SDF77 Greenwich, LLC ("SDF" or "Lender") as the plaintiff in the Foreclosure Action, claiming that "First Niagara … has assigned the Note and Mortgage that is the subject of this foreclosure action to SDF77 Greenwich …." By order dated February 24, 2014, the Superior Court granted the motion and directed SDF to file a substituted complaint. Upon information and belief, SDF is affiliated with Madison Realty Capital.

9. The Debtor and its members answered the substituted complaint and raised both defenses and counterclaims. The Lender filed a motion for summary judgment. The Debtor opposed. The court denied SDF's summary judgment motion. Below is a summary of some of the disputes and issues which formed the basis to deny the Lender's summary judgment motion and which outline the central disputes between the Debtor and SDF.

10. As its name provides, the "Construction to Permanent Mortgage" provided for an automatic conversion of the Debtor's loan from construction financing to permanent financing and expressly extended the maturity date in connection with the conversion. Such a conversion feature was a central feature of the loan and the Debtor relied on this conversion feature when entering into the loan agreement. This conversion feature was designed to offer the Debtor flexibility to allow for the "sell out" of the townhomes in a feasible and commercially reasonable manner.

3

11. The automatic conversion provision of the Mortgage provides that if certain conditions are fulfilled, "the Mortgage **shall** automatically convert from a Construction Mortgage to a Permanent Mortgage… [and] the Maturity Date will be extended as set forth in the Note secured by this Mortgage." (*See* Mortgage at 4)(emphasis added)  All of the conditions to the automatic conversion to a permanent loan were met.  However, the Note does not specify the length of the extension of the maturity date.  This ambiguity, or missing term, caused disagreement between the Debtor and its Lender and ultimately, litigation.

12. Notwithstanding the fact that the extension was supposed to be "automatic" and there was no provision for any fees in connection with the automatic extension, the Lender refused to convert the loan to permanent financing at a then market, lower reasonable interest rate relied upon and understood by the Debtor.  Moreover, while the dispute was simmering, the Debtor was twice constrained to agree to $25,000 "extension fees" and once required to agree to a $50,000 "modification fee" in order to temporarily extend maturity.  The Debtor entered into and paid for the temporary extensions under duress from the lender.  None of these "extension" documents referred to or contemplated that they were accomplishing the automatic conversion to a permanent mortgage loan or extending the maturity date in connection with the conversion despite the Debtor's requests.

13. It is the Debtor's belief that the loan automatically converted to a permanent mortgage loan at a then market interest rate and term, and thus could never have matured.

The Sale of the Properties

14. The Debtor believes that it can sell one or both units in the near term.  However, the cloud of litigation has not only put a chill on buyers seeking to pursue offers, it resulted in one buyer who is presently a tenant-occupant walking from a contract.  Indeed, the Debtor

4

believed that it had a buyer for one of the units. In or around November 2014, the Debtor received an offer to purchase one of the units by its current tenant but an agreement could not be reached because the Mortgage encumbers both units and the Debtor could not guarantee a partial release as to the unit being sold. The buyer reluctantly decided not to pursue the sale without assurances of ownership and clean title. Such a cloud has also depressed the value of the Debtor's townhouses within the high end Greenwich market.

15. The Debtor has entered into a broker agreement with Coldwell Banker Residential Brokerage ("Coldwell") for the sale of one of the units. On or soon after the Petition Date, the Debtor will be seeking permission from the Bankruptcy Court to retain Coldwell as its real estate broker to help market, advertise and sell the Property. With the foreclosure action stayed by virtue of the Chapter 11 case, Coldwell will be able to market the Property to prospective buyers with the understanding that a sale of the Property in the Chapter 11 case will be a sale under 363 of the Bankruptcy Code, which will transfer the Property to the buyer free and clear of lien and encumbrances. As previously explained, prior to the Chapter 11 filing, the Debtor attempted to obtain a consensual sale process outside of Bankruptcy Court, however, the Lender would not agree to forebear from its foreclosure action to allow for a free market sale. However, the Debtor believes that it can sell one or both of the townhouses under the supervision of this Court in a manner that will maximize value and pay the Lender off. As the prime "spring selling season" is now upon us, the Debtor believes that the timing requires the instant filing so as to allow for a sale of one or both units in this selling season. Based on the other townhomes sold, prior offers received, indications of value from brokers, and the Debtor's members' experience in having already sold a dozen similar townhomes in the Greenwich market, the Debtor believes it can sell the units for values that will pay the Lender off in full on its allowed claim.

3060183-3

## INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

16. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

17. The nature of the Debtor's business and circumstances leading to this filing are described above.

**Local Rule 1007-2(a)(2)**

18. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Local Rule 1007-2(a)(3)**

19. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

20. The Debtor's twenty (20) largest creditors' list is annexed hereto as Schedule I.

**Local Rule 1007-2(a)(5)**

21. A list of the names and addresses of the five largest secured creditors is annexed hereto as Schedule II.

**Local Rule 1007-2(a)(6)**

22. Attached hereto as Schedule III is a summary of estimated assets and liabilities.

**Local Rule 1007-2(a)(7)**

23. There are no publicly held securities of the Debtor.

3060183-3

**Local Rule 1007-2(a)(8)**

24. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

25. The Debtor owns the Properties.

**Local Rule 1007-2(a)(10)**

26. The Debtor's books and records are located at 235 Main Street, Suite 540, White Plains, New York.

**Local Rule 1007-2(a)(11)**

27. The only lawsuit pending against the Debtor is captioned *SDF77 Greenwich, LLC (substituted plaintiff) v. 56 Milbank Avenue, LLC et al*; FST CV 13-6020370 (Superior Court, Judicial District of Stamford)

**Local Rule 1007-2(a)(12)**

28. The Debtor is currently co-managed by the members of the Debtor.

**Local Rule 1007-2(b)(1) and (2)**

29. The Debtor has one employee on an independent contractor basis. The Debtor does not project to pay for any services of its members during the thirty day period following the filing.

**Local Rule 1007-2(b)(3)**

30. The Debtor's projected income and expenses for the next thirty days is as follows:

Income: $17,500.00

Expenses: $20,505.32

7

## CONCLUSION

31.     The Debtor believes it is in the best interests of all of it creditors that it be afforded an opportunity to sell and/or reorganize its obligations in Chapter 11. The needs and interests of the Debtor and its creditors will best be served by the Debtor's possession of its assets and management of its affairs as a Debtor-in-Possession under Chapter 11.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: White Plains, New York
       May 20, 2015

_____
Joel M. Friedberg, Member

3060183-3

## Schedule I

## Twenty Largest Unsecured Creditors[1]

| Unsecured Creditor Name & Address | Description | Disputed/Unliquidated/Contingent | Amount |
|---|---|---|---|
| Anna Altcheck<br>1060 Fifth Avenue, Apt. 3D<br>New York, NY 10128 | Security Deposit | Disputed | $9,295.00 |
| ABF Marble & Granite Corp<br>38-11 29th Street<br>LIC, NY 11101<br>(718) 361-5634 | Trade Debt | Disputed | $5,709.14 |
| Camara Slate Products Inc.<br>963 S Main Street<br>Fair Haven, VT 05743<br>(802) 265-3200 | Trade Debt | Disputed | $3,129.50 |
| Grande Arredo<br>c/o Paola Strazzer, Trustee in Bankruptcy<br>Viale Della Repubblica<br>n. 193/b 3111 Treviso<br>0422 301495 | Trade Debt | Disputed | $2,991.00 |
| Golden Age Mortgage Corp.<br>33 The Crossings<br>Purchase, NY | Affiliated | Disputed | Undetermined |
| Interstate Lumber<br>184 South Water Street<br>Greenwich, CT 06830<br>(203) 531-8050 | Trade Debt | Disputed | $47,857.23 |

---

[1] The data in this schedule is the most current information available and reflects the Debtor's financial condition as of April 28, 2015.  The information set forth below shall not constitute an admission on behalf of the Debtor, nor is it binding upon the Debtor.  The Debtor reserves all rights to challenge the priorities, nature, amount, and status of any claim or debt and of any lien or security interest securing such interest or debt.

3060183-3

| **Unsecured Creditor Name & Address** | **Description** | **Disputed/Unliquidated/Contingent** | **Amount** |
|---|---|---|---|
| Louis C. Fusco, RLA<br><br>PO Box 362<br>Pound Ridge, NY 10576<br><br>(914) 764-9123 | Trade Debt | Disputed | Undetermined |
| M.A.R.S. Electric LLC<br><br>190 R White Street<br>Danbury , CT 06810<br><br>(203) 790-6425 | Trade Debt | Disputed | $87,663.64 |
| Robert Vincent Sisca & Associates, LLC<br>32 Field Point Road<br>Greenwich, Ct 06830<br><br>(203) 629-3831 | Trade Debt | Disputed | $1,033.50 |
| Rocco V. D'Andrea Inc.<br><br>6 Neil Lane<br>Riverside, CT 06878<br><br>(203) 637-1779 | Trade Debt | Disputed | Undetermined |
| Schupp's Land Clearing & Excavating Inc.<br><br>29 Blanksville Rd<br>Armonk, NY 10504<br><br>(914) 273-0247 | Trade Debt | Disputed | Undetermined |
| **TOTAL** | | | **$157,679.01** |

I-2

3060183-3

## Schedule II

## **Five Largest Secured Creditors**

| Secured Creditor Name & Address | Description | Amount |
|---|---|---|
| SDF77 Greenwich, LLC | Mortgage | $4,586,365.47 |

c/o Timothy P. Moylan
Diserio Martin O'Connor & Castiglioni LLP
One Atlantic Street
Stamford, CT 06901

-and-

Jerold C. Feuerstein, Esq.
Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, NY 10017

## Schedule III

## Summary of Assets and Liabilities[2]

*Assets:*

| | |
|---|---|
| Improved Real Property | $7,990,000.00 |
| Cash in Checking Account | $105,444.66 |

*Liabilities:*

| | |
|---|---|
| Mortgage and Unsecured Debt | $4,744,044.48 |

---

[2] The data in this schedule is the most current information available and reflects the Debtor's financial condition as of April 28, 2015. The information set forth below shall not constitute an admission on behalf of the Debtor, nor is it binding upon the Debtor. The Debtor reserves all rights to challenge the priorities, nature, amount, and status of any claim or debt and of any lien or security interest securing such interest or debt.

3060183-3