**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 56 MILBANK AVENUE, LLC, | Case No. 15-22710 (RDD) |
| Debtor. | |

## CHAPTER 11 PLAN OF REORGANIZATION

**September 1, 2015**

**OLSHAN FROME WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, NY 10022
Adam H. Friedman, Esq.
Jonathan Koevary, Esq.
212.451.2300

*Counsel for the Debtor*

ii

## Table of Contents

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME AND GOVERNING LAW ................................................................1

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ....................................8

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ...............................................................................................9

ARTICLE IV ACCEPTANCE OR REJECTION OF PLAN ...................................11

ARTICLE V PROVISIONS FOR IMPLEMENTATION OF PLAN ..........................12

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............14

ARTICLE VII PROVISIONS REGARDING DISTRIBUTIONS..............................14

ARTICLE VIII PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS .................................................................18

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE
DATE OF THE PLAN ................................................................................19

ARTICLE X DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE, AND
GENERAL INJUNCTION...........................................................................20

ARTICLE XI RETENTION AND PRESERVATION OF CAUSES OF ACTION....................22

ARTICLE XII RETENTION OF JURISDICTION .............................................23

ARTICLE XIII MISCELLANEOUS PROVISIONS .............................................25

## CHAPTER 11 PLAN

## INTRODUCTION

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), 56 Milbank Avenue, LLC Associates, LLC, a Connecticut limited liability company, the debtor and debtor in possession in the above-captioned Chapter 11 Case, hereby respectfully proposes the following chapter 11 Plan as proponent (the "Debtor" or "Proponent") providing for the sale of refinancing transfer or Sale of the Debtor's Properties under the Plan and the resolution of the outstanding Claims against, and Interests in, the Debtor pursuant to the Bankruptcy Code.   Reference is made to the accompanying Disclosure Statement for a discussion of the Debtor's history, business, historical financial information and properties, circumstances giving rise to the commencement of this Chapter 11 Case, and for a summary and analysis of Debtor's Plan and the treatment of Creditors, Equity Interest Holders, and other parties in interest provided for herein.   Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Bankruptcy Code.

Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation and further reserves the right to designate votes under Bankruptcy Code § 1126(e).

Only the Holders of Class 2, 3 and 4 Claims and Interests are entitled to vote on the Plan. Such Holders are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan.  No materials other than the Disclosure Statement, the respective schedules and exhibits attached thereto and referenced therein have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time and Governing Law

1.      For purposes herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, note or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions (subject to the rights of parties set forth herein to consent or consult with respect to the form and substance of certain documents); (c) any reference herein to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may

3195658-5

be amended, modified or supplemented; (d) unless otherwise specified, all references herein to articles, exhibits and schedules are references to the respective Articles, Exhibits or Schedules hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the express provisions of any contract, instrument, release, note or other agreement or document entered into in connection herewith, the laws of the State of New York, giving effect to the conflict of laws' principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan including, without limitation, any rule of law or procedure supplied by federal law as interpreted under the decisions of the State of New York (including the Bankruptcy Code and the Bankruptcy Rules).

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Administrative Expense*" means any cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) and 507(a)(2) or 507(b) of the Bankruptcy Code, including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's businesses; (b) compensation for legal, financial advisory, accounting and other professional services, and reimbursement of expenses awarded or allowed pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, including Professional Fees; (c) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date in connection with the conduct of its business; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code; provided, however, that the term Administrative Expense does not include any Assumed Liabilities.

2.      "*Administrative Expense Bar Date*" means ten (10) business days after the Effective Date.

3.      "*Administrative Expense Request*" means a request for payment of an Administrative Expense.

4.      "*Administrative Expense Reserve*" has such meaning set forth in Article VII.A herein.

2

5.     "*Allowed*" means with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed on or before the Effective Date or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (c) any Claim or Interest expressly deemed allowed by this Plan; or (d) any Claim or Interest deemed allowed by agreement of the Holder of such Claim or Interest and the Debtor.

6.     "*Bankruptcy Clerk*" means the Clerk of the United States Bankruptcy Court for the Southern District of New York.

7.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time and as applicable to the Chapter 11 Case.

8.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Chapter 11 Case.

9.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Case, promulgated pursuant to 28 U.S.C. § 2075, and the General, Local and Chambers Rules of the Bankruptcy Court, as amended from time to time.

10.    "*Bar Date*" means, as applicable, the (i) Claims Bar Date, (ii) Governmental Unit Bar Date, (iii) Administrative Expense Bar Date or (iv) such other date established by order of the Bankruptcy Court or this Plan.

11.    "*Business Day*" means any day, other than a Saturday, Sunday, "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)) or any other day on which commercial banks in New York are required or are authorized to close by law or executive order.

12.    "*Cash*" means the proceeds from the Sale, plus any cash on hand.

13.    "*Cash Collateral Order*" means the Final Order Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection and (C) Granting Related Relief, dated June 22, 2015 (Docket no. 17).

14.    "*Causes of Action*" means, without limitation, all claims, actions, causes of action, chooses in action, suits, debts, dues, damages, judgments, third-party claims, counterclaims and crossclaims (including, but not limited to, all claims arising under state, federal or other non-bankruptcy law) of the Debtor or its Estate that are or may be pending or existing on the Effective Date, or which are based on any facts or circumstances occurring on or before the Effective Date, against any Entity, based in law or equity, including, but not limited to, under the

3

Bankruptcy Code and applicable non-bankruptcy law, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

15.     "*Chapter 11 Case*" means the Chapter 11 Case styled *In re 56 Milbank Avenue LLC*, Case Number 15-22710 (RDD), pending in the Bankruptcy Court.

16.     "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

17.     "*Claims Bar Date*" means _____ ___, 2015 at 4:00 p.m. (prevailing Eastern time), which is the date that has been set by the Bankruptcy Court by which Creditors are required to have filed Proofs of Claim.

18.     "*Claims Reserve*" means collectively, the Administrative Expense Reserve and the Unsecured Claims Reserve.

19.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III herein.

20.     "*Closing Date*" means the date on which the Property shall be conveyed by the Debtor to the Purchaser pursuant to this Plan.

21.     "*Confirmation*" means entry by the Bankruptcy Clerk of the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "*Confirmation Date*" means the date of Confirmation.

23.     "*Confirmation Hearing*" means the hearing(s) at which the Bankruptcy Court considers entry of the Confirmation Order.

24.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtor.

25.     "*Creditor*" means a Holder of a Claim.

26.     "*Debtor*" means 56 Milbank Avenue, LLC a Connecticut limited liability company, debtor and debtor in possession in the Chapter 11 Case.

27.     "*Disclosure Statement*" means the Disclosure Statement for the Plan as it may be amended, supplemented or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law and as approved by the Bankruptcy Court.

28.     "*Disputed*" means, with respect to any Claim, as of the date of determination: (a) listed on the Schedules as unliquidated, disputed or contingent, unless and until it is Allowed pursuant to a Final Order or deemed allowed under the Plan; (b) as to which the Debtor or any

4

other party-in-interest has Filed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn with prejudice, determined by a Final Order or deemed allowed under the Plan; (c) as to which the deadline for filing objections has not passed (whether or not an objection has been Filed), unless and to the extent such Claim or Equity Interest has been Allowed pursuant to a Final Order or deemed allowed under the Plan; or (e) that is otherwise disputed by the Debtor or any other party-in-interest, or is subject to any right of setoff or recoupment, or the Holder thereof is subject to any Claim or Cause of Action, in accordance with applicable law, which dispute, right of setoff or recoupment, Claim or Cause of Action, has not been withdrawn or determined in favor of such Holder by a Final Order or otherwise resolved or allowed pursuant to the Plan.

29.    *"Effective Date"* means the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article IX.B herein have been satisfied or waived pursuant to Article IX.C herein.

30.    *"Encumbrance"* means any mortgage, interest, deed of trust, security interest, pledge, Lien, judgment, restriction (whether on voting, sale, transfer, disposition, or otherwise), lease, license, other right of usage, charge, option and other right of ownership, and any other encumbrance of every type and description whether imposed by law, agreement, understanding or otherwise, including, without limitation, all of the foregoing that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtor's interest in the Debtor, or any similar right.

31.    *"Entity"* means an entity as defined in section 101(15) of the Bankruptcy Code.

32.    *"Equity Interest"* means any equity interest of the Debtor.

33.    *"Estate"* means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

34.    *"File"* or *"Filed"* means file or filed with the Bankruptcy Court in the Chapter 11 Case.

35.    *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

36.    *"Final Order"* means an order of the Bankruptcy Court: (i) as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, reconsideration or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order has been affirmed by the highest court to which such order was appealed or from which certiorari was sought, reargument, reconsideration or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired; provided, however, that the possibility of a motion pursuant to Rule 59 or 60 of the

5

Federal Rules of Civil Procedure or any analogous Bankruptcy Rule being Filed with respect to such order shall not cause such order to be deemed a non-Final Order.

37.     *"General Unsecured Claim"* means all Unsecured Claims.

38.     *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

39.     *"Governmental Unit Bar Date"* means March 5, 2012, at 4:00 p.m. (prevailing Eastern time), which is the date that has been set by the Bankruptcy Court by which Governmental Units are required to have filed Proofs of Claim.

40.     *"Holder"* means the Entity holding the beneficial interest in a Claim, Equity Interest, Administrative Expense.

41.     *"Impaired"* means, with respect to any Class, impaired as defined in section 1124 of the Bankruptcy Code.

42.     *"Insider"* means an insider as defined in section 101(31) of the Bankruptcy Code.

43.     *"IRS"* means the Internal Revenue Service.

44.     *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

45.     *"Petition Date"* means May 20, 2015.

46.     *"Plan"* means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

47.     *"Plan Supplement"* means the compilation of documents and form of documents, schedules and exhibits to be Filed on or before five (5) days prior to the Voting Deadline and which may be amended from time to time until Confirmation.

48.     *"Post-Effective Date Transactions"* means the dissolution or winding-up of the Debtor, as provided for in Article V.F of this Plan

49.     *"Priority Claim"* means any Priority Non-Tax Claim or Priority Tax Claim.

50.     *"Priority Non-Tax Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Administrative Expense.

51.     *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

6

52.    "*Pro Rata*" means in the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class.

53.    "*Professional*" means any Entity employed pursuant to a Final Order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

54.    "*Professional Fee Application*" means a request for the Bankruptcy Court to approve and allow Professional Fees.

55.    "*Professional Fees*" means any compensation for services rendered and reimbursement of expenses incurred (including, but not limited to, hourly, transaction and success fees) by Professionals in the Chapter 11 Case.

56.    "*Proof of Claim*" means a proof of claim as defined in Bankruptcy Rule 3001.

57.    "*Property*" or "*Properties*" shall mean, as applicable, one or both townhouse units owned by the Debtor, known as Units A and B, located at 56 Milbank Avenue, Greenwich, CT.

58.    "*Purchase Price*" means the amount of consideration received by the Debtor for the purchase and sale of the Properties.

59.    "*Purchaser*" means the party who is purchasing the Property or Properties..

60.    "*Record Date*" means the date as of which the identity of Holders of Claims or Interests is set for purposes of determining the identity of Entities entitled to receive a ballot(s) and vote on the Plan.

61.    "*Reorganized Debtor*" means the reorganized Debtor after entry of the Confirmation Order and the occurrence of the Effective Date.

62.    "*Sale*" means the sale of the Property to the Purchaser pursuant to the Purchase Agreement approved under the Sale Order.

63.    "*Sale Order*" means that certain order to be entered by the Bankruptcy Court in the Chapter 11 Case approving the sale of the Property to the Purchaser under the Plan.

64.    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs that were Filed by the Debtor on August 16, 2011 in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as they may be further amended and supplemented from time to time.

7

65.    *"SDF Secured Claim"* means the secured claim of SDF77 Greenwich, LLC, in the amount agreed upon by the Debtor and SDF or as determined by final order of the Bankruptcy Court.

66.    *"SDF"* means SDF77 Greenwich, LLC.

67.    *"Treasury Regulations"* means title 26 of the Code of Federal Regulations.

68.    *"U.S. Trustee"* means the United States Trustee for the Southern District of New York.

69.    *"Unimpaired"* means, with respect to any Class, not Impaired.

70.    *"Unknown Causes of Action"* means any Causes of Action that currently exist or may subsequently arise, and which have not been otherwise set forth herein or in any schedule of Causes of Action, because the facts upon which such Causes of Action are based are not currently or fully known by the Debtor.

71.    *"Unsecured Claim"* means any Claim other than an Administrative Expense, Priority Claim, the SDF Secured Claim or an Equity Interest.

72.    *"Unsecured Claims Reserve"* has such meaning set forth in Article VII.C herein.

73.    *"Voting Deadline"* means [_____].

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

**A.**    **Administrative Expenses**

**1.**    **Administrative Expense Bar Dates; Treatment of Administrative Expense Claims**

All Administrative Expense Claims (other than Professional Fee Claims) accruing through the Effective Date and not otherwise paid in the ordinary course of business shall be filed with the Bankruptcy Court by no later than the Administrative Expense Bar Date, and objections (if any) to such Administrative Expense Claims will be filed no later than forty-five (45) days after the Administrative Expense Bar Date. Any Holder of a Administrative Expense Claim (other than Professional Fee Claims) who fails to file a timely request for the payment of a Administrative Expense Claim that is required to be filed on or before the Administrative Expense Bar Date: (a) shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against the Debtor, any Purchaser or filing a request for the allowance thereof), and the Debtor, the Debtor's property, shall be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim; and (b) such Holder shall not be permitted to participate in any distribution under the Plan on account of such Administrative Expense Claim.

8

3195658-5

On the later to occur of (a) the Effective Date and (b) the date on which a Administrative Expense Claim shall become Allowed, the Debtor will (i) pay to each Holder of an Allowed Administrative Expense Claim, in cash, the full amount of such Allowed Administrative Expense Claim, or (ii) satisfy and discharge such Allowed Administrative Expense Claim on such other terms and conditions as may be agreed between the Holder of such Administrative Expense Claim, on the one hand, and the Debtor on the other hand.

Notwithstanding anything herein or in the Plan to the contrary, all Entities seeking awards by the Bankruptcy Court of Professional Fee Claims for compensation for services rendered or reimbursement of expenses incurred prior to the Effective Date will (a) File, on or before the date that is sixty (60) days after the Effective Date their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full by the Debtor, in Cash, in such amounts as are Allowed by the Bankruptcy Court, within five (5) Business Days of entry of such order.  The Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

## B.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim will, in full and final satisfaction of such Allowed Priority Tax Claim, be paid in full, in Cash, on the Effective Date, unless the Holder consents to other treatment.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

## A.    Summary

The categories listed below classify Claims against and Equity Interests in each of the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

9

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | SDF Secured Claim | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interests | Yes | Yes |

**B.    Classification, Treatment and Voting**

**1.    Class 1 –Priority Non-Tax Claims**

Classification:  Class 1 is composed of the Priority Non-Tax Claims.

Treatment:  The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims.  Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Priority Non-Tax Claim, the amount of such Allowed Priority Non-Tax Claim, in Cash, on or as soon as practicable following the Effective Date, plus interest from the Petition Date until the date of repayment at the lesser of (i) the rate established by the Bankruptcy Court or (ii) the rate set forth in any agreement between the Holder of the Claim and the Debtor unless such Holder consents to other treatment.

Voting:  Class 1 is Unimpaired, and Class 1 Creditors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Class 1 Creditors are not entitled to vote to accept or reject the Plan.

**2.    Class 2 – SDF Secured Claim.**

Classification:  Class 2 is composed of the SDF Secured Claim.

Treatment:  In full and final satisfaction of the Class 2 Secured Claim, the Holder shall receive:

(i)    **If Class 2 votes to accept the Plan or is presumed to have accepted the Plan:** a one-time payment of $4,586,365.47 in Cash on or as soon as practicable following the Effective Date plus post petition interest at the rate of 3.75% per annum; or

(ii)    **If Class 2 votes to reject the Plan:** to the extent of the amount of its Allowed Class 2 Secured Claim, as determined by the Bankruptcy Court, payment in full of such Allowed Claim based upon a 30 year term, commencing as of August 17, 2009, in monthly installments, with interest thereon at the rate of 3.75% per annum.

10

<u>Voting</u>:  Class 2 is Impaired, therefore, the Class 2 Creditor is entitled to vote to accept or reject the Plan.

3.    **Class 3 – General Unsecured Claims**

<u>Classification</u>:  Class 3 is composed of General Unsecured Claims.

<u>Treatment</u>:  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such General Unsecured Claims, each Holder's Pro-Rata share of the net excess Sale, refinance, or rental proceeds, if any, after payment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and the Allowed SDF Secured Claim, unless such Holder consents to other treatment.  In the event all senior creditors are paid in full from the sale or refinancing of the Properties, and there is sufficient cash on hand, Class 3 General Unsecured Claims shall be entitled to post-petition interest at the Federal Judgment Rate, unless such Holder consents to other treatment.

<u>Voting</u>:  Class 3 is Impaired, and Class 3 Creditors are entitled to vote to accept or reject the Plan.

4.    **Class 4 – Equity Interests**

<u>Classification</u>:  Class 4 is composed of the Equity Interests.

<u>Treatment</u>:  Each Holder of an Equity Interest shall receive, in full and final satisfaction of such interests, each Holder's Pro-Rata Share of the net excess Sale, refinance, or rental proceeds, if any, after payment in full of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Allowed SDF Secured Claim, and General Unsecured Claims, unless such Holder consents to other treatment.  In the event there are no excess proceeds to pay creditors in full, Equity Interests shall not receive any distribution on account of their interests and such interests shall be extinguished.

<u>Voting</u>:  Class 4 is Impaired, and Class 4 Equity Interest Holders are entitled to vote to accept or reject the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF PLAN

A.    <u>**Voting Classes; Presumed Acceptance and Rejection of Plan**</u>

Holders in Classes 2, 3 and 4 are entitled to vote as a Class to accept or reject the Plan. Class 1 is Unimpaired and are deemed to accept the Plan and therefore, not entitled to vote on the Plan.

11

**B.**    **Acceptance by Impaired Classes**

An Impaired Class of Claims shall be deemed to have accepted the Plan if, not counting any Creditor designated pursuant to section 1126(e) of the Bankruptcy Code, (a) Creditors holding at least two-thirds in amount of the Allowed Claims held by Creditors actually voting in such Class have voted to accept the Plan and (b) Creditors holding more than one-half in number of the Allowed Claims held by Creditors actually voting in such Class have voted to accept the Plan.

An Impaired Class of Equity Interests shall be deemed to have accepted the Plan if Holders of such interests, other than any entity designated under Bankruptcy Code section 1126(e), that hold at least two-thirds in amount of the allowed interests of such Class held by Holders of such interests that have accepted or rejected the Plan

**C.**    **Non-Consensual Confirmation**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor may request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan or any document in the Plan Supplement, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

<div align="center">

**ARTICLE V**

**PROVISIONS FOR IMPLEMENTATION OF PLAN**

</div>

**A.**    **Sale, Refinance, or Rental of the Property**

The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing and directing the Debtor, without the need for any approval by the Debtor's members, on the occurrence of the Effective Date, to consummate the terms of the Purchase Agreement to sell one or both of the Properties; to obtain applicable exit financing to refinance one or both of the Properties; or to enter into any necessary rental agreements, with all proceeds of the Sale, refinancing, or rental agreements to be paid to creditors in order of priority in accordance with the Plan and, after all creditors are paid under the Plan, to Equity Holders.  In the event SDF votes to reject the Plan, the Debtor reserves the right to rent both units in order to fund the restructured loan under the Plan.

The Confirmation Order shall authorize the Debtor to:

(a)    convey title to the Properties prior to the Effective Date pursuant sections 363(f), 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all Liens, Claims, Encumbrances or interests (other than permitted Liens or Encumbrances and the Assumed Liabilities, if any), to the Purchaser under the Sale Order;

<div align="center">12</div>

(b)     if applicable, on the Closing Date, assign any or all of the existing Mortgage to the Purchaser's lender; and

(c)     obtain a secured or unsecured loan to refinance and pay the remaining SDF Secured Claim in accordance with the terms of its treatment under the Plan.

(d)     pay all amounts required to Creditors and Equity Holders, as applicable, in accordance with the terms of this Plan.

## B.    Sources of Cash for Plan Distributions

All Cash necessary to make payments required pursuant to this Plan will be obtained from the proceeds of the Sale, refinancing, or rental of the Property.  Cash payments to be made pursuant to this Plan will be made by the Debtor.

## C.    Post-Closing Date Transactions

On or after the Closing Date, and prior to the Effective Date, the Debtor is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer, rental, or refinancing of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on, terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

## D.    Post-Effective Date Transactions

Without in any way limiting anything herein, on or after the Effective Date, the Debtor is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan.  The Post-Effective Date Transactions may include such dissolutions, transfers or liquidations as may be determined by the Debtor, in its sole discretion, to be necessary or appropriate.  The actions to effect the Post-Effective Date Transactions may include:

(a)     the execution and delivery of appropriate agreements or other documents of transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree;

(b)     the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree;

(c)     the filing of appropriate certificates of dissolution on terms consistent with the terms of this Plan pursuant to applicable state law;

13

(d)     all actions necessary to pursue and resolve the Causes of Action;

(e)     all other actions that are necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with a Post-Effective Date Transaction.

**E.      Retention of Assets and Books and Records**

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, Causes of Action) and any property acquired pursuant hereto shall remain with, and be preserved and reserved in, the Estate for distribution in accordance with this Plan or abandoned in the discretion of the Debtor pursuant to the Confirmation Order.

All books and records of the Debtor shall be secured, maintained and under the control of the Debtor.

**F.      *Intentionally Deleted.***

**G.      General Settlement of Claims and Interests**

As discussed in the Disclosure Statement and as provided for herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, and as a result of arm's-length negotiations, upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, controversies and issues resolved pursuant to this Plan arising from or based on the Chapter 11 Case.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Prior to the Effective Date, the Debtor will have rejected or filed a motion to reject all executory contracts or unexpired leases of the Debtor not previously (a) assumed and assigned, or (b) terminated or expired by their terms. Any executory contracts that were not expressly assumed and assigned, terminated or expired by their terms or rejected shall be deemed rejected upon entry of the Confirmation Order.

## ARTICLE VII

## PROVISIONS REGARDING DISTRIBUTIONS

**A.      Administrative Expense Reserve**

From and after the Effective Date, the Debtor will establish and maintain the Administrative Expense Reserve, a reserve account for the payment of, among other things, Administrative Expenses Allowed after the Effective Date.

14

The amount established in the Administrative Expense Reserve shall be sufficient for the payment of (i) Administrative Expenses and (ii) Administrative Expenses incurred after the Effective Date, including any Disputed Administrative Expenses.

Following the payment, satisfaction or resolution of all (i) Allowed Administrative Expenses and (ii) Administrative Expenses incurred after the Effective Date any amounts remaining in the Administrative Expense Reserve shall be transferred to the Debtor for payment to Holders of Administrative Expense Claims.

## B.    Time and Method of Distributions

### 1.    Cash Distributions to Holders of Allowed Claims

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 2.    Distributions

The Distribution Agent or such other Entity as may be designated by the Debtor shall make the distributions under the Plan in accordance with the Plan.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.  The Debtor shall have the authority to make distributions as provided for under the Plan and administer and liquidate any of the assets of the Debtor remaining as of the Effective Date

## C.    Disputed Claims Reserves

From and after the Effective Date, and until such time as all Disputed Claims have been compromised, settled or determined by Final Order, the Debtor shall establish and maintain a reserve account (the "Unsecured Claims Reserve") necessary to ensure that each Holder of a Disputed Claim shall receive, payment in full in accordance with the provisions of the Plan in the event such Claim is Allowed in the maximum amount claimed.

15

At such time as, and to the extent that, any Disputed Claim becomes Allowed by Final Order, in whole or in part, the Debtor shall utilize amounts held by the Debtor to make payment to the Holder of such Claim as provided for herein.

Following the payment, satisfaction or resolution of all Disputed Claims any amounts remaining in the Unsecured Claim Reserve shall be transferred to the Debtor for distribution under the Plan.

**D.**    *Intentionally Deleted.*

**E.**    **Manner of Distribution under Plan**

Any distribution in Cash to be issued under the Plan or any shall be made by check drawn on a domestic bank.

**F.**    **Delivery of Distributions**

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of record of Allowed Claims and Equity Interests shall be made at the address of each such Holder set forth on the Debtor's books and records unless superseded by the address set forth on Proofs of Claim filed by any such Holders.

**G.**    **Application of Distributions**

Any distributions under the Plan shall be applied first to repayment in full of principal and second to interest, if any.

**H.**    **Undeliverable Distributions**

    **1.**    **Holding of Undeliverable Distributions**

If any distribution to the Holder of an Allowed Claim under the Plan is returned as undeliverable, no further distributions shall be made to such Holder unless and until the issuer of the distribution is notified in writing of such Holder's then-current address. Any Holder ultimately receiving a distribution that was returned as undeliverable shall not be entitled to any interest or other accruals of any kind on such distribution. Nothing contained in the Plan shall require the issuer of any distribution to attempt to locate any Holder of an Allowed Claim.

    **2.**    **Failure to Claim Undeliverable Distributions**

Any Holder of an Allowed Claim or Equity Interest that does not assert its rights pursuant to the Plan to receive a distribution within three (3) months from and after the date such distribution is returned as undeliverable shall have such Claim or Equity Interest for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against or Equity Interests in the Debtor, its professionals or the Claims Reserve. In such case, any consideration held for distribution on account of such Claim or Equity Interest shall belong to the Estate for distribution in accordance with the terms of the Plan.

16

### I.    Compliance with Tax Requirements/Allocation

The issuer of any distribution under the Plan shall comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to any such applicable withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

### J.    Time Bar to Cash Payments

Checks issued on account of Allowed Claims or Equity Interests shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the Holder of the Allowed Claim or Equity Interests with respect to which such check originally was issued. Any Claim or Equity Interest in respect of such a voided check shall be made within six (6) months from and after the date of issuance of such check. After such date, all Claims or Equity Interests in respect of voided checks shall be discharged and forever barred, and the Estate shall be entitled to retain all monies related thereto for distribution in accordance with the terms of the Plan.

### K.    Distributions After Effective Date

Distributions made after the Effective Date to Holders of Claims or Equity Interests that are not Allowed as of the Effective Date, but which later become Allowed, shall be deemed to have been made on the Effective Date.

### L.    Fractional Dollars; De Minimis Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. No payment shall be made on account of any distribution less than twenty-five dollars ($25) with respect to any Allowed Claim unless a request therefor is made in writing to the issuer of such payment on or before ninety (90) days after the Effective Date.

### M.    Setoffs/Recoupment

Except as stated in the last sentence of this subparagraph, notwithstanding anything contained herein to the contrary, the Debtor may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff or exercise recoupment against any Allowed Claim, Allowed Equity Interest or Allowed Administrative Expense and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made) on account of the claims, rights and Causes of Action of any nature that the Debtor may hold against such Holder; provided, however, that neither the failure to effect such a setoff or

17

recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtor may possess against such Holder.

**N.      Preservation of Subordination Rights**

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtor or their successors of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

## ARTICLE VIII

## PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

**A.      Prosecution of Objections to Disputed Claims**

Upon the Effective Date, the Debtor shall (i) be responsible for pursuing any objection to the allowance of all Disputed Claims and (ii) receive all rights of setoff and recoupment and other defenses that any of the Debtor or the Estate may have with respect to any Disputed Claim.

Upon the Effective Date, the Debtor shall also have the authority to file, settle, compromise or withdraw any objections to any Disputed Claims without approval of the Bankruptcy Court.

All objections to Disputed Claims shall be served and filed not later than one-hundred-eighty (180) days after the Effective Date.

**B.      Estimation of Claims**

The Debtor shall have the right, but not the obligation, at any time to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of a Disputed Claim and the United States Trustee, and which hearing may be held on an expedited basis), estimating for final Distribution purposes any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim. If the Bankruptcy Court estimates any contingent, Disputed or unliquidated Claim, the estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court, including for purposes of the Disputed Claims Reserve; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Debtor may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim. On or after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court

18

C.    **Payments and Distributions on Disputed Claims**

Notwithstanding any provision hereof to the contrary, any issuer of a distribution hereunder may, in its discretion, pay the undisputed portion of a Disputed Claim.

D.    **Distributions Relating to Disputed Claims**

At such time as a Disputed Claim becomes an Allowed Claim, the Debtor shall distribute to the Holder of such Claim, such Holder's Pro Rata share of the property distributable with respect to the Class in which such Claim belongs.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the Holders of Allowed Claims in the same Class.

E.    **Distributions after Allowance**

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND EFFECTIVE DATE OF THE PLAN**

A.    **Conditions Precedent to Confirmation**

The following are conditions precedent to Confirmation of this Plan that must be (i) satisfied or (ii) waived in accordance with Article IX.C below:

1.    If applicable, the Sale Order shall have been entered by the Bankruptcy Court;

2.    An Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court.

B.    **Conditions Precedent to Effective Date of Plan**

The following are conditions precedent to the Effective Date of the Plan that must be (i) satisfied or (ii) waived in accordance with Article IX.C below:

1.    Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

19

2.     The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

3.     If applicable, the Closing Date shall have occurred, the Purchase Price received by the Debtor, and title to the Property shall have been conveyed to the Purchaser in accordance with this Plan and the Confirmation Order free of all Liens, Claims, Encumbrances or interests (other than permitted Liens or Encumbrances and the Assumed Liabilities specified in the purchase agreement, if any);

4.     There shall not be in effect on the Effective Date any (i) Order entered by a U.S. court, (ii) order, opinion, ruling or other decision entered by any other court or governmental entity or (iii) United States or other applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan; and

5.     All other actions and documents necessary to implement the Plan shall have been effected or executed in form and substance satisfactory to the Debtor.

## C.     **Waiver of Conditions Precedent**

Each of the conditions listed in Article IX.A or B may be waived by the Debtor.

## D.     **Effect of Non-Occurrence of Effective Date**

If the conditions listed in Sections IX.A or B are not satisfied or waived, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against or any Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor or any other party or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

<div align="center">

**ARTICLE X**

**DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE,
AND GENERAL INJUNCTION**

</div>

## A.     **Discharge of Claims**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate and Reorganized Debtor from any and all Debts of and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and its Estate and Reorganized Debtor, and their respective successors or assigns, shall be discharged, to the fullest

<div align="center">20</div>

extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or its Estate or Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts,  rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan.

## B.   Exculpation from Liability

The Debtor and its members, and their employees, Affiliates, attorneys, professionals, agents and representatives (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, the Purchase Agreement or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase or securities, including the Plan Shares. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

## C.   Release

On the Effective Date, the Debtor, Reorganized Debtor, and any and all Holders of Claims and Equity Interests shall release unconditionally and hereby are deemed to release unconditionally the Debtor and its members, and their employees, Affiliates, attorneys, professionals, agents and representative (collectively, the "Released Parties") from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtor, the Bankruptcy Case, any Property of the Debtor, the business or operations of the Debtor, any Plan

Documents, the Plan, or any of the transactions contemplated thereby; provided, however, that this release provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. This release provision is an integral part of the Plan and is essential to its implementation

## D.    General Injunction

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability, or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or Reorganized Debtor or their respective assets or property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or Reorganized Debtor or their respective assets or property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or Reorganized Debtor or their respective assets or property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or Reorganized Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or Reorganized Debtor under the Plan and the Plan Documents and the other documents executed in connection therewith. The Debtor and Reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision.  This general injunction provision is an integral part of the Plan and is essential to its implementation.

## ARTICLE XI

## RETENTION AND PRESERVATION OF CAUSES OF ACTION

## A.    Retention of Causes of Action

Except as otherwise provided in the Plan, Causes of Action shall, on the Effective Date, automatically and irrevocably vest in the Reorganized Debtor.

## B.    Preservation of Causes of Action

Except as otherwise provided in the Plan, the Debtor reserves all rights to pursue any and all Causes of Action.  Pursuant to the Plan, the Debtor has the exclusive right to pursue, administer, settle, litigate, enforce and liquidate consistent with the terms and conditions of the Plan:

22

(a)    Any Causes of Action, whether legal, equitable or statutory in nature, including without limitation the actions identified in a schedule to be filed with the Plan Supplement, if any, and

(b)    Any Unknown Causes of Action.  The failure to list or describe any such Unknown Cause of Action herein is not intended to limit the rights of the Estate to pursue any Unknown Causes of Action.

Except as otherwise provided in the Plan, the Debtor expressly reserves all Causes of Action (including Unknown Causes of Action) for later adjudication, and, therefore, no preclusion doctrine or other rule of law, including, without limitation, any statute of limitations or the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a result of the confirmation or Effective Date of the Plan, or the Confirmation Order.  In addition, the Debtor and any successors-in-interest thereto, expressly reserve the right to pursue or adopt any Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity including, without limitation, the plaintiffs and co-defendants in such lawsuits.

## ARTICLE XII

## RETENTION OF JURISDICTION

A.    **Bankruptcy Court**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and to the extent permitted by applicable law, the Bankruptcy Court shall retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Case or the Plan after the Effective Date, and any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157 including, without limitation, jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of the SDF Secured Claim and any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

2.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    Ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions hereof;

4.    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including all Causes of Action and objections or estimations to

23

Claims or Equity Interests, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by (i) the Debtor or (ii) any other Entity after the Effective Date;

5.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and of all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, Disclosure Statement, or Purchase Agreement;

6.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

7.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan, except as otherwise provided herein;

8.      Resolve any cases, controversies, suits or disputes with respect to the releases, injunctions and other provisions contained in Article X hereof and enter any orders that may be necessary or appropriate to implement such releases, injunctions and other provisions;

9.      Enter and implement any orders that are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

10.     Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

11.     Resolve any issues that arise in connection with the administration of and distributions from the Estate; and

12.     Enter an order and/or Final Decree concluding the Chapter 11 Case.

Notwithstanding any other provision in this article to the contrary, nothing herein shall prevent the Debtor from commencing and prosecuting any Causes of Action (including Unknown Causes of Action) before any other court or judicial body which would otherwise have appropriate jurisdiction over the matter and parties thereto, and nothing herein shall restrict any such courts or judicial bodies from hearing and resolving such matters.

24

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**A.    Plan Supplement**

The Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  Holders of Claims and Equity Interests may obtain a copy of the Plan Supplement by contacting Debtor's counsel in writing, Olshan Frome Wolosky LLP, 65 East 55th Street, New York, NY 10022, Attn: Adam H. Friedman, (afriedman@olshanlaw.com).  The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**B.    Payment of Statutory Fees**

All fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Plan Administrator shall be liable for and shall pay the fees under 28 U.S.C. § 1930 until entry of an order converting, dismissing or closing the Chapter 11 Case, whichever occurs first.  In addition, the Debtor shall file post-confirmation quarterly reports in conformity with U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Case, whichever comes first.

**C.    Modification of Plan**

Subject to the limitations contained in the Plan:

1.    The Plan may be amended or modified by the Debtor (a) before the Confirmation Date, to the extent permitted by section 1127 of the Bankruptcy Code; (b) after the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, to the extent the Debtor institute proceedings in the Bankruptcy Court, pursuant to section 1127(b) of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order or to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or orders of the Bankruptcy Court; or (c) after the entry of the Confirmation Order, upon order of the Bankruptcy Court in accordance with section 1127(b) of the Bankruptcy Code.

2.    The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent permissible under section 1127 of the Bankruptcy Code without the need to re-solicit acceptances.

3195658-5

3.      After the Effective Date, the Debtor may amend or modify, upon order of the Bankruptcy Court, the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## D.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization or liquidation.  If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and without prejudice to any party, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission of any sort by the Debtor or any other Entity.

## E.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## F.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall occur.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by any Debtor entity with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor entity with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

## G.    Section 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, under this Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtor; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan or the Sale shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government

26

official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment. For avoidance of doubt, without limitation, this section shall apply to all transactions described in Article V of this Plan.

All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtor in the Chapter 11 Case, whether in connection with a sale pursuant to section 363 of the Bankruptcy Code, including the Sale, or otherwise, shall be deemed to be or have been done in furtherance of this Plan.

## H.    Further Assurances

The Creditors and Equity Interest Holders receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## I.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent by first class U.S. mail, postage prepaid, as follows:

To the Debtor:

Joel M. Friedberg
235 Main Street, Suite 540
White Plains, New York, 10601

With a copy to:

Olshan Frome Wolosky LLP
65 East 55th Street
New York, New York 10022
Attn.:   Adam H. Friedman, Esq.

## J.    Transactions on Business Days

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## K.    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and provisions hereof.

27

**L.**     **Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable and necessary fees and expenses incurred to implement the Plan in accordance with and from the funds provided for such use in this Plan.

**M.**     **Severability**

The provisions of this Plan shall not be severable unless such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

**N.**     **Conflicts**

To the extent any provision of this Plan, the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and control.

To the extent any provision of the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of this Plan, the terms and provisions of the Plan and the Confirmation Order shall govern and control.

**O.**     **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and still extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the closing of the Chapter 11 Case.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**P.**     **Entire Agreement**

This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

**Q.**     **Closing of the Chapter 11 Case**

The Debtor shall promptly, upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close the Chapter 11 Case.

**Change of Control Provisions**

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of the Plan shall be waived or otherwise cancelled under the Plan.

Dated: August 31, 2015

<div align="center" style="margin-left:40%">

**56 MILBANK AVENUE, LLC**

as Debtor and Debtor-in-possession

By: _____

</div>

29