UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:                                                    Case No. 15-22710-rdd

56 MILBANK AVENUE, LLC,                                   Chapter 11

                              Debtor.
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TERMINATING
THE DEBTOR'S EXCLUSIVITY PERIODS AND AUTHORIZING
<u>SDF77 GREENWICH LLC TO PROPOSE A CHAPTER 11 PLAN</u>**

Dated: New York, New York
       December 24, 2015

                                                KRISS & FEUERSTEIN LLP

                                                *s/ Jerold C. Feuerstein*
                                                Jerold C. Feuerstein, Esq.
                                                Jason S. Leibowitz, Esq.
                                                360 Lexington Avenue, Suite 1200
                                                New York, New York 10017
                                                (212) 661-2900

                                                *Attorneys for SDF77 Greenwich LLC*

# BACKGROUND[1]

The relevant facts and particulars are set forth in the Application (the "Application") of SDF77 Greenwich LLC (the "Secured Creditor"), as submitted herewith and as otherwise set forth herein.

# ARGUMENT

## I. The Exclusivity Period Should Be Terminated For Cause

Pursuant to 11 U.S.C. § 1121(b), only a debtor in possession may file a plan within the 120–day exclusivity period or any extensions authorized by the court. It was intended that at the outset of a Chapter 11 case, a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests. H.R.Rep. No. 595, 95th Cong., 2d Sess. 221–222 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787.

Notwithstanding, a debtor's exclusive right to file a plan of reorganization may be challenged under 11 U.S.C. § 1121(d), which provides as follows: "(d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section." A party in interest must establish cause for reducing or extending the exclusivity periods.

### A. Cause Exists To Terminate and/or Reduce The Exclusive Periods

The determination of cause under § 1121(d) is a fact-specific inquiry and this Court has broad discretion in extending or terminating exclusivity. See *In re Adelphia Commc'ns Corp.*,

---

[1] Capitalized terms used herein but not otherwise defined shall have the same meanings given to them as set forth in Application (as defined herein).

2

352 B.R. 578, 586 (Bankr.S.D.N.Y.2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact specific."); see also *In re Lehigh Valley Prof'l Sports Club, Inc.*, No. 00–11296DWS, 2000 WL 290187 (Bankr.E.D.Pa. Mar. 14, 2000) (relief under § 1121(d) is committed to the sound discretion of the bankruptcy judge); *In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr.W.D.Pa.1987) ("The decision of whether or not to extend the debtor's period of exclusivity rests with the discretion of the Court.").

The Honorable Robert E. Gerber outlined several factors that Courts should consider when deciding whether to terminate and/or reduce the duration of exclusivity in his analysis of *In re Adelphia Communications Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. Jan 03, 2007). These factors (the "Adelphia Factors") include: (a) the size and complexity of the case; (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists. Id. at 176.

As will be demonstrated below, an evaluation of the Adelphia facts will lead the Court to grant the Motion to terminate exclusivity.

### I. The Adelphia Factors

#### 1. Size and Complexity of the Debtor's Case

The Debtor's case is neither large nor complex enough to justify a further extension of exclusivity. Aside from the claim of the Secured Creditor, each of the creditors identified in the Debtor's petition and schedules are unsecured.

An analysis of each of the alleged claims of each of the Debtor's unsecured eleven (11) creditors as set forth in the Debtor's schedules, reveal that all of the claims of other creditors aggregate to an amount which is likely less than $158,000.

Accordingly, the Secured Creditor hold the largest claim against the Debtor's estate, which Claim exceeded $5,922,389.00 on the Petition Date.

The Bar Date passed on October 30, 2015 (for non-governmental units, and on November 30, 2015 for governmental units). No committee has been appointed in this case and there are approximately 50 docket entries in this case since the case was filed. The Debtor is in the business of developing real property.

None of the factors which typically indicate that this case is either large or complex enough to justify further extending the exclusivity period are present. See *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 296 (W.D.Tenn.1987) (finding that a debtor's case was large and complex when the debtor had 100 creditors holding approximately 225 claims against the estate in the amount of roughly $10 million; the estate was valued at $13 million and was comprised of mainly improved and unimproved real property); see also *In re Texaco, Inc*., 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which

4

generally constitute cause for extending the exclusivity periods."). As a result, these factors favor terminating exclusivity and authorizing the Secured Creditor to propose a Chapter 11 Plan.

### 2. Failure to File A Plan That Would Permit the Debtor to Emerge from Bankruptcy

As set forth in the Application, although the Debtor's initial exclusivity period was scheduled to expire on or about September 17, 2015, this Court further extended the exclusivity period by an additional one-hundred and thirty-eight (138) days to permit the Debtor to file a disclosure statement which contained adequate information and a confirmable plan.

Notwithstanding the fact that this case will have been pending for more than two-hundred and thirty (230) days by the time this Application will be heard, in its Second Exclusivity Motion the Debtor acknowledges[2] that adequate information necessary to permit creditors and eligible voters to make informed decisions about the Debtor's plan of reorganization was *not* provided in the Debtor's Plan or Disclosure Statement. To the extent that the Debtor seeks to rely upon the fact that the Debtor's Objection to the Secured Creditor's claim has not been resolved yet as a basis to extent exclusivity, this fact is attributable to the Debtor's failure to comply and interpret certain discovery rules which led to a further adjournment of the Court's December 21, 2015 evidentiary hearing.

In addition, it is clear from reviewing the Debtor's Plan with respect to implementation (See Article VI) that the Debtor has set forth no feasible exit strategy which could permit the Debtor to emerge from bankruptcy. Instead, the Plan vaguely provides at Article VI (B) that "all cash necessary to make payments required pursuant to this Plan will be obtained from the

---

2 See Debtor's Second Exclusivity Motion at ¶ 1, wherein the Debtor states: "The Debtor seeks the relief in an abundance of caution, as it believes the possibility of either an amended plan or greater time needed to solicit *after* determination of the lender's claim could better inform voters and would streamline the confirmation process."

5

proceeds of the Sale, refinancing, or rental of the Property." Nowhere in the Plan or Disclosure Statement does the Debtor provide its creditors and/or eligible voters with the slightest clue of how it actually intends on emerging from bankruptcy.

Additional support for the fact that the Debtor's Plan fails to provide the Debtor with any realistic ability to emerge from bankruptcy can be found in the unrealistic the treatment contemplated in the Debtor's Plan which provides the Secured Creditor with two possible proposals for resolution of this case. First, the Debtor's Plan offers a settlement with the Secured Creditor by permitting the Debtor to make a lump sum payment of $4,586,365.47 on an unspecified date from unspecified funds, "as soon as practicable following the Effective Date," along with post-petition interest at the rate of 3.75% per annum. Notwithstanding, the Secured Creditor is actually owed the sum of $5,922,389.71, plus interest as set forth in the Loan Documents significantly in excess of 3.75%.

While the Debtor conveniently omits any value of the Property from its Plan or Disclosure Statement, the Secured Creditor has reason to believe that the Property is over secured, providing a basis for the Secured Creditor's entitlement to post-petition interest in excess of the Note rate (6.25%), and instead, at the default rate of 11.25%. Accordingly, the Debtor has failed to provide any rational basis as to why the Secured Creditor should or would accept a reduction of its claim by more than $1,336,024.00, and a drastic reduction in post-petition interest. Accordingly, there would be no possibility of the Secured Creditor voting for this alternative in the Debtor's Plan.

In the event that the Secured Creditor does not accept the Debtor's settlement proposal, the Debtor's Plan provides a second alternative for its intended treatment of the Secured

6

Creditor's Claim through the restructuring of the Loan by providing the Secured Creditor with monthly installment payments over a 30 year term, commencing as of August 17, 2009, with interest at the rate of 3.75% per annum. Absolutely no basis or rationale is provided as to how the Debtor arrived at these figures.

It is respectfully submitted that the proposed treatment of the Secured Creditor's Claim at Page 10 of the Plan and page 14 of the Disclosure Statement fails to indicate that the Debtor could procure similar loan terms from a similarly situated lender, taking into account their recent history involving the Debtor's uncured default, the pending foreclosure litigation and the instant bankruptcy.

Indeed, modifications to the Loan as proposed by the Debtor reflect a loan which would appear unrealistic and once which would unattainable in today's market. Accordingly, the Debtor would be hard pressed to demonstrate that such a commercial loan would be available to it based upon current market conditions and the fact that the Debtor failed to satisfy conditions of the Loan Documents which resulted in a maturity default.

To the extent that the Debtor seeks to argue that it should be entitled to the terms of a residential mortgage loan in today's market as would only be available to a hypothetical residential, individual homeowner, the Debtor has entirely failed to disclose how such a loan to the Debtor could make sense given applicable market conditions and applicable law. On the other hand, to the extent that the Debtor would suggest that it should be entitled to any commercial loan with a thirty (30) year term, the Debtor has similarly failed to demonstrate how applicable market conditions or applicable law would saddle the Secured Creditor with same.

Furthermore, upon information and belief, one of the two (2) units which makes up the Property is believed to be unable to be leased by the Debtor, which further reduces income generated

7

by the Debtor and there through, the Debtor's access to additional funds necessary to settle with the Secured Creditor.

As a result, the Debtor's Plan unfairly discriminates against the Secured Creditor by proposing to pay all general junior classes of creditor, including unsecured claims and equity with interest before, and instead of, the Secured Creditor's Claim.

Thus, it is clear that the Debtor has no real exit strategy, and is instead, seeking merely to delay the Secured Creditor from making progress in this case. Accordingly, it would appear that the Debtor has failed to demonstrate a reasonable possibility of a successful reorganization within a reasonable time. See *Am. Network Leasing v. Apex Pharms., Inc. (In re Apex Pharms., Inc.)*, 203 B.R. 432, 442 (N.D.Ind.1996); see also 7 Collier on Bankruptcy ¶ 1121.06[2] (16th ed. rev.2011). Therefore, this factor weighs most heavily in favor of terminating exclusivity and authorizing the Secured Creditor to propose a Chapter 11 Plan.

### 3. Insignificant Progress in Negotiations with Creditors,[3] and Good Faith Progress Towards Reorganization

Aside from preliminary negotiations to settle with the Secured Creditor, the Debtor had failed to engage the Secured Creditor in any genuine negotiations. In addition, the Secured Creditor has no knowledge of any discussions between the Debtor and other classes of creditors. Upon information and belief, the Debtor has failed to provide the Secured Creditor with any meaningful settlement proposals for the duration of this case. Notably, none of the details of the Debtor's purported funding from the proceeds of any alleged Sale, refinancing of the Property or rental of the Property in an amount sufficient to permit the Debtor to become reinstated have been shared with the Secured Creditor, and no documentation to support the Debtor's good faith

---

3 No committee was appointed in this case.

ability to consummate a Sale or a refinance, have been provided to the Secured Creditor during the time that this case has been pending. As a result, this factor favors terminating exclusivity and authorizing the Secured Creditor to propose a Chapter 11 Plan.

### 4. Significant Time Has Elapsed; More Time Than Necessary to Negotiate a Plan; No Unresolved Contingencies

Although it may be premature to conclude that the Debtor will be unable to submit a viable plan, the Debtor has had a considerable amount of time to contemplate and submit a viable plan since (i) this case was commenced on May 20, 2015, and (ii) since the Bar Date ran on October 30, 2015. Thus, more than two-hundred and seven (217) days have elapsed since this case was filed and more than fifty-four (54) days have passed since all non-governmental claims were filed. Notably, the bar date for governmental units has similarly passed on November 30, 2015.

Compared to the claims of the Secured Creditor, the claims which were filed by creditors of the Debtor are relatively small in number (fewer than 12) and dollar amount (less than $158,000.00 combined).

While no evidentiary hearing has occurred in connection with the Debtor's Objection to the Secured Creditor's Claim, the reason that no hearing has occurred is a direct result of the Debtor's failure to comply with certain discovery rules, namely by (i) failing to provide an expert report and (ii) similarly failing to provide an executed copy of the deposition of the Debtor's principal, thereby causing the previously scheduled evidentiary hearing (for 12/21/15) to have to be rescheduled.

Thus, the Debtor will be hard-pressed to argue that it has not been provided with sufficient time to review, evaluate and content with the claim of the Secured Creditor for the

9

purposes of providing adequate information in connection with a plan and disclosure statement pursuant to § 1125.

These factors weigh heavily in favor of terminating exclusivity and authorizing the Secured Creditor to propose a Chapter 11 Plan.

## **CONCLUSION**

For the reasons set forth above, the Secured Creditor concludes that it has established cause for terminating exclusivity as requested in this Motion, and a basis to permit the Secured Creditor to file its own plan and disclosure statement.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

**WHEREFORE**, the Secured Creditor respectfully requests this Court enter an Order pursuant to 11 U.S.C. § 1121(d) terminating the Debtor's Exclusivity Periods, authorizing the Secured Creditor to propose a Chapter 11 Plan and granting such other relief as may be just and proper.

Dated: New York, New York
      December 22, 2015

KRISS & FEUERSTEIN LLP

*s/ Jason S. Leibowitz*
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

*Attorneys for SDF77 Greenwich LLC*

11