UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| -----------------------------------------------------------------x | |
|---|---|
| In re: | Case No. 15-22710-rdd |
| 56 MILBANK AVENUE, LLC, | Chapter 11 |
| Debtor. | |
| -----------------------------------------------------------------x | |

**APPLICATION IN SUPPORT OF MOTION *IN LIMINE***
**TO EXCLUDE EXPERT REPORT**

SDF77 Greenwich LLC (the "Secured Creditor"), a secured creditor of the debtor and debtor-in-possession, 56 Milbank Avenue, LLC (the "Debtor") and an interested party in this Chapter 11 case, by and through its attorneys, Kriss & Feuerstein LLP, moves this Court for entry of an *in limine* Order pursuant to 11 U.S.C. §§ 105(a) and Bankruptcy Rules 9014, 7026, 7028-7037 and Fed. R. Evid. 403, 701-703 as well as the Local Rules of this Court: (i) excluding the three page report of Thomas R. Borek ("Borek"), dated January 9, 2016 (the "Borek Report")(Exhibit A hereto); (ii) disqualifying Borek and any testimony from Borek, and (iii) for such further and different relief as the Court may deem just and proper (the "Motion").

**Preliminary Statement**

1. This case has been pending since May 20, 2015 (the "Petition Date"). On July 10, 2015 the Secured Creditor filed a Proof of Claim for $5,922,389.71 (the "Claim") (Exhibit B hereto). On July 5, 2015 the Debtor filed an objection **[ECF. No. 21] (**the "Objection"**)** to the Secured Creditor's claim arguing that the claim was overstated by $600,000. The gravamen of Debtor's position is that the Mortgage at issue provided for automatic conversion to a permanent loan upon the occurrence of several conditions precedent, which Debtor alleges occurred sometime in August, 2009.

2. This Court ordered discovery on this issue to proceed and scheduled a hearing on the Objection to the Secured Creditor's Claim. The hearing date is presently February 23, 2016.

3. The Debtor submitted the Borek Report as an "expert" report in support of certain contentions in its Objection to the Secured Creditor's Claim. Briefly, the Debtor's own petition and schedules identify Borek as (i) an equity interest holder of the Debtor, (ii) a co-debtor with the Debtor (Schedule H) pursuant to a personal guaranty he executed in favor of the Secured Creditor. Accordingly, Borek should be disqualified for his apparent bias, and the Borek Report should be excluded due to an obvious conflict of interest. Further, the Borek Report fails to provide an expert opinion beyond the ken of the average layman, will not aid the finder of fact, serves no purpose in this proceeding and is therefore irrelevant. Finally, Mr. Borek has not followed the rigorous procedures required of an expert as necessary to go from (1) factual observations or assumptions to (2) applying his experience to his observations or assumptions, and then to (3) his conclusions. The Secured Creditor seeks an order disqualifying Borek as an expert and excluding the Borek Report in its entirety.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and Bankruptcy Rules 9014, 7026, 7028-7037 and Fed. R. Evid. 701-703 as well as the Local Rules of this Court.

## FACTS

6. The facts underlying the origination of the Loan,[1] the extensions of the Loan Maturity Due Date, and the assignment of the Loan to the Secured Creditor are set forth in great detail in the Secured Creditor's response (the "Response") dated February 10, 2016 **[ECF No. 78]** and will not be repeated. After the Debtor's objection to the Secured Creditor's Claim the parties engaged in discovery. There were some issues which were addressed by the Court's order dated September 1, 2015 **[ECF No. 34]** (Exhibit C hereto). The Debtor's deposition of Joel Freidberg was held on September 28, 2015 and the Secured Creditor's deposition of Shoshana Carmel was held on October 14, 2015.

7. By Order dated November 4, 2015 **[ECF No. 47]**(Exhibit D hereto) this Court extended various deadlines for in anticipation of an evidentiary hearing (the "Hearing") involving issues surrounding the Secured Creditor's Claim and the Objection. On the same day the Debtor produced a so-called disclosure of Borek as an expert witness (Exhibit E hereto). The parties further conferred and discussed outstanding issues with the Court. The Court then ordered that Borek submit an expert report that complied with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and fixed new dates for the Secured Creditor's response to the claim objection as well as the hearing date. On January 11, 2016 the Debtor served the Borek Report. On February 10, 2016 the Secured Creditor responded to Claim Objection and a final pre-trial conference was held before the Court on February 11, 2016. The Hearing is presently scheduled for February 23, 2016. According to the Court's rules, motions *in limine* should be served and filed five days before the hearing.

---

[1] For the convenience of the Court the defined terms used in the Response will be used here as well.

**THE APPLICATION**

8. This motion *in limine* seeks to exclude the Borek Report and disqualify Borek from testifying as an expert witness. The Borek Report reveals that:

- He has a background in accountancy;
- He started Golden Age Mortgage Company in 1994 and it acts as a mortgage lender;
- He has experience in construction to permanent loans both as a borrower and a lender;
- He has never acted as an expert before; and
- He is not being compensated because he is a member of the debtor.

Concerning his opinion, he explains that the materials contained at page 16 of the Objection **[ECF No. 21]** that were downloaded from the internet concerning construction to permanent loans and debt service coverage are in accord with his experience. Finally, he opines that a 30 year amortization period is appropriate in this matter. We submit that this opinion cannot be used due to a potential conflict of interest as well as relevancy issues.

9. Rule 702 of the Federal Rules of Evidence[2/] provides for the admissibility of expert testimony in the federal courts, setting the following parameters:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

[2] Insofar as we are citing law in this application we request that we be relived form the filing of a separate, formal memorandum of law.

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Reiffin v. Microsoft Corp*., 270 F. Supp. 2d 1132, 1145 (N.D. Cal. 2003)(Walker, J.). Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony is inadmissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. *See Daubert v. Merell Dow Pharmaceuticals. Inc*., 509 U.S. 579, 589-91, 113 S. Ct. 2786 (1993); *Andrews v. Metro North Commuter R. Co*., 882 F.2d 705, 708 (2d Cir. 1989) (for an expert's testimony to be admissible, it must be directed to matters within the witnesses scientific, technical, or specialized knowledge md not to lay matters which a jury is capable of understanding and deciding without the expert's help); *United States v. Jackson*, 425 F.2d 574, 576 (D.C. Cir. 1970) (to warrant the use of expert testimony ... two elements are required. First, the subject of the inference must be so instinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in its search for truth).

10. The burden is on the party offering proposed expert opinion testimony to prove by a preponderance of the evidence that the proffered testimony satisfies the requirements for admissibility. *See Daubert*, 509 U.S. at 592 n.10. But even if the proffered expert opinion is relevant, it may be objectionable because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As the Court observed in *Daubert* , 509 U.S. at 595 (1993):

> Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Judge Weinstein has explained: "Expert evidence can be

> both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Weinstein, ["Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended," 138 F.R.D. 631,] 632.

Thus before we even look at relevance let's see if there is unfair advantage obtained in the instant situation. Admittedly, Borek is a member of the Debtor, is liable under a personal guarantee (Exhibit F hereto) and has also arranged to have his wife's company – which he runs -- lend money to the Debtor (Exhibit G hereto). The questions is presented, can someone be their own expert witness? Courts in the Second Circuit have routinely said no.

11. ***The Proposed Testimony is more Prejudicial than Probative***. The Court in *Kranis v. Scott*, 178 F. Supp. 2d 330, 333 (E.D.N.Y 2002) found that a party's, who was an ex-lawyer, testimony as an expert would be far more prejudicial than probative. Fed. R. Evid. 403. Similarly, in *Ordon v. Karpie*, 534 F. Supp. 2d 124, 127 (D. Conn. 2006) the Court found that a doctor could not act as an expert in support of his own claim. The court in *Ordon* went further than the court in *Kranis* which noted a potential for an advocate testifying and confusing the jury[3/] noting that having a party act as an expert is dangerous because "he is nonetheless too intertwined with the facts of this case as the defendant in the underlying …action." *Id.* Here, Borek is not only a principal of the Debtor, but he is a personal guarantor of the Loan, and operates as President of Golden Age Mortgage Corp., a corporation owned by his wife, which alleges to have lent in excess of $662,000 to the Debtor. Essentially, if Borek is successful and the Secured Creditor's claim is reduced, he and his wife stand to reap direct rewards as there will be more money available for unsecured creditors and equity holders. The Debtor suggests that Borek is fit to testify as an expert. If the Debtor was serious about the need for an expert opinion, it should have followed proper protocol and retained

[3] We acknowledge that there is no jury in the instant case, but submit that upon this record, Mr. Borek's testimony would be unduly biased and prejudicial which outweighs any probative value.

an independent expert. Borek's testimony on the other hand, should be excluded simply because he is wearing too many hats in this litigation.

12. ***The Proposed Testimony is not Helpful.*** The party proffering an expert bears the burden of showing that expert assistance is necessary, and that the matter is beyond the ordinary capabilities of jurors. *See, e.g., U.S. v. Rodriguez-Pacheco*, 475 F.3d 434 (1st Cir. 2007) (expert not needed because jurors are capable of distinguishing between real photographs of minors and virtual depictions of minors). Expert testimony has always be excludable if it did not address something for which the jurors would need expert assistance. Fed. R. Evid 702. The "assist the trier of fact" clause has been called the "helpfulness" requirement, *i.e.,* the concept that an expert's opinion is not admissible unless it would be helpful to the trier of fact. *Daubert ,* 509 U.S. at 591.

13. Thus, one may object to expert testimony as not helpful "in resolving a factual dispute." *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). For example, an expert witness whose opinion consists of legal argument and legal conclusion fails to satisfy the helpfulness requirement. *U.S. v. Sinclair*, 74 F.3d 753, 758 (7th Cir. 1996) (experts are prohibited from offering opinions about legal issues on which the judge will instruct the jury); *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1338-40 (7th Cir. 1989) (proffered opinions were "legal rather than economic opinions" which did no more than offer a CV as opposed to expert skills); *Scottsdale Insurance v. City of Waukegan*, 689 F.Supp.2d 1018, 1023 (N.D. Ill. 2010) (those types

///

of opinions "belong in briefs, not in expert's reports"). We submit that the "expert" testimony here -- simply quoting from a treatise for definitial terms and then describing his experience -- is not needed by a Bankruptcy Court which routinely handles various loan issues,[4/] issues involving generally accepted accounting principles and has as much access to the internet as Borek.

14. ***Kumho Issues***. A *Daubert* challenge typically focuses on the science involved, the scientific methods undertaken by the expert and the general trustworthiness of these underlying concepts. Nothing in Fed. R. Evid. 702 is intended to suggest that experience alone--or experience coupled with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). How do the Courts reconcile the rigorous scientific requirements of *Daubert* to an experience based witness? The answer lies in the fact that courts still require such experts to have employed a methodology, even if it is not a scientific one. In other words, there have to be reasons – reasons that the expert can articulate – that explain how the expert was able to go from (1) factual observations or assumptions to (2) applying their experience to their observations or assumptions, and then to (3) conclusions. Otherwise, the expert is engaging in what the Seventh Circuit has called being a witness who "supplies nothing but a bottom line." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005). Put another way, they are simply supplying their qualifications and their conclusions, asking the trier of fact to take their

---

[4] By way of example let us examine the definition of Debt Service Coverage Ratio used by both Borek and Friedberg. Borek identifies it as a common term in commercial real estate lending. Indeed, it is. He then states that it refers to the ratio between **the revenue** the property generates and the amount necessary to service, or make payments on, the debt. Borek Report, p. 3 (emphasis supplied). Both Borek and Freidberg leave out an essential term: net operating income ("NOI"). Thus the ratio is determined calculating the rent, **less expenses**, to create the NOI, and dividing that number by the debt service. *See, In re San Francisco Medical Associates, Inc.,* 2013 WL 5529647 at *4 (Bank. N.D. Cal 2013)(undertaking a DSCR analysis in a commercial real estate setting to determine lack of feasibility in Chapter 11 plan).

word for it. *See, e.g., Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989) (proffered expert did no more than offer a CV as opposed to expert skills).

15. Borek's expert report begins with Borek referring to the Objection, and then suggesting that in his experience with construction to permanent loans it is reasonable for these types of loan to have a balloon payment provision and range from 15 to 30 year amortization schedule. Then magically, Borek opines that a 30 year amortization is reasonable. If Borek is relying solely or primarily on experience – as is the case here -- then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (we've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.).

16. Further, the more subjective the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106-08 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded). In *Kumho Tire Co. v. Carmichael*, 119 S.Ct 1167, 1176 (1999) the Court noted it might be useful to ask even of a witness "whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." In the case at bar, Borek has done nothing to explain why a 15 year, 20 year, or 25 year amortization period is any less reasonable or that the subject Loan actually converted from a construction loan to a permanent loan and at what point in time this actually occurred and why. The Borek Report is nothing more than his resume, quotes from the internet, and a conclusion.

17. ***Conclusion***. The Borek Report suffers from multiple problems. Submitted by an insider, it is essentially more prejudicial than probative. It adds nothing to the realm of knowledge that this Court should be able to provide based upon the Court's experience in accountancy and loans. Finally, Borek has not linked up his experience as an expert witness in support of his conclusion. The Borek Report suffers from triple witching problems and should be excluded in its entirety.

Dated: New York, New York
February 18, 2016

KRISS & FEUERSTEIN LLP
*Attorneys for SDF77 Greenwich LLC*

By: ______________________________

Jerold C. Feuerstein
Jason S. Leibowitz
Dwight Yellen
dyellen@kandfllp.com
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900