**Begos Brown & Green LLP**
2425 Post Road, Suite 205
Southport CT 06890
Christopher G. Brown, Esq.
(203) 254-1902

*Special Litigation Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 56 MILBANK AVENUE, LLC, | Case No. 15-22710 (RDD) |
| Debtor. | |

**Memorandum of Law in Opposition to**
**Motion In Limine to Exclude Expert Report**

56 Milbank Avenue, LLC, ("Debtor") submits this memorandum of law in opposition to SDF77 Greenwich LLC's ("Secured Creditor") motion in limine to exclude Debtor's expert and his expert report in connection with the evidentiary hearing scheduled for February 23, 2016.

**Background**

The loan documents include an "Open-End Convertible Construction to Permanent Loan Mortgage Deed and Security Agreement" ("Mortgage"). Debtor's objection to Secured Creditor's claim (Doc. 21) notes that (i) the Mortgage provides for an automatic conversion from a construction to a permanent mortgage loan but the terms of the permanent loan are absent from the loan documents; and (ii) under Connecticut law missing contract terms may be supplied by trade custom or standard usage.

To help supply the missing terms, Debtor has proffered Thomas R. Borek's expert report as to the meaning of "construction to permanent loan" and "debt service coverage ratio" in the commercial mortgage industry.

Secured Creditor chose not to disclose an expert or provide an expert report.

**Argument**

**I.    Only Experts May Testify as to Industry Usage and Definitions**

To begin, "[i]t is appropriate to consider expert testimony of custom and usage to inform the interpretation of a contractual term." *Lee v. Marvel Enterprises, Inc.*, 386 F.Supp.2d 235, 246 n. 5 (S.D.N.Y. 2005) (citing *Am. Nat'l Fire Ins. Co. v. Mirasco*, 265 F.Supp.2d 240, 252 (S.D.N.Y. 2003); *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87 n. 4 (2d Cir. 2002); *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir.2000)); *see In re September 11th Liability Insurance Coverage Cases*, 2005 WL 503143, at *1 (S.D.N.Y. 2005) (expert disclosures required as to any "issues permitting expert testimony, for example, custom and usage to explain ambiguities"); *Lawrence v. Cohn*, 197 F.Supp.2d 16, 26-27 (S.D.N.Y. 2002), *aff'd* 325 F.3d 141 (2d Cir. 2003) ("[witness"] is a qualified expert witness as to the proper interpretation of the terms in question according to the custom and usage of drafting limited partnership agreements, and I consider his opinions as probative on those issues").

The Second Circuit has confirmed that a party proffering a witness who will offer "explanations regarding typical international banking transactions or definitions of banking terms … [is] obligated to satisfy the reliability requirements set forth in … Rule [702], and disclose [the witness] as an expert pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure." *Bank of China, New York Branch v. NBM LLC*, 359

F.3d 171, 182 (2d Cir. 2004), *cert. dismissed*, 546 U.S. 1026, 126 S.Ct. 675, 163 L.Ed.2d 545 (2005).

Moreover, the witness may not give such opinion testimony as a lay witness pursuant to Rule 701. *Bank of China*, 359 F.3d at 181 ("the District Court abused its discretion to the extent it admitted the testimony based on [the employee-witness'] experience and specialized knowledge in international banking").

Clearly, custom and usage evidence is appropriate and can be delivered by a properly disclosed expert who is reliable within the meaning of Rule 702. Secured Creditor effectively concedes that Debtor properly disclosed Mr. Borek. The question, therefore, is one of reliability and helpfulness, which we address seriatim.

## II.    Mr. Borek's Report is Reliable

Secured Creditor concedes that in assessing reliability, the "rigorous scientific requirements of *Daubert*" do not apply to an experience based expert like Mr. Borek (Affirmation ¶ 14). Secured Creditor claims that "courts still require such experts to have employed a methodology, even if it is not a scientific one" (Affirmation ¶ 14). Plaintiff, however, failed to cite any case where a custom and usage expert had to explain his progression "from (1) factual observations or assumptions to (2) applying their experience to their observations or assumptions, and then to (3) conclusions" (Affirmation ¶ 14).[1]

---

[1] Secured Creditor cites *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005), which dealt with far more technical topics than definitions of industry terms. The Seventh Circuit described the expert testimony at issue, as follows:

> Shapiro proposed to testify that, with set-top boxes meeting the 1998 DVB standard and otherwise up to snuff, WH–TV would have experienced rapid growth paralleling that of DirecTV, the leading satellite broadcaster. Shapiro's estimate had two components: first the number of customers in San Juan who would have subscribed to DirecTV during the period 2002 through 2008, and second the percentage of those customers who would

3

Pg 4 of 10

The court in *Seneca Ins. Co. v. Wilcock*, 2007 WL 415141, at *9 (S.D.N.Y. 2007) confirmed that there is no such requirement for an expert who will testify about the meaning of industry terms:

> In substance, Shapiro is primarily seeking to proffer testimony as to industry usage of a term. That form of testimony does not readily fit within the analytical framework of *Daubert, see id.* at 589, 592-93, which addresses scientific testimony and has since been expanded to encompass other forms of technical testimony that may not fall within the rubric of science. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). Indeed, the Supreme Court has made it clear that the *Daubert* factors will not always offer the most appropriate guidance for an assessment of expert testimony due to the wide range of experts and expertise sought to be invoked in various types of litigation. *Id.* at 150 ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.") (citation omitted). For example, the absence of any publication by Shapiro or any peer review of his opinions is essentially irrelevant to their admissibility. Moreover, although plaintiff asserts that Shapiro's method is not testable, all that he is doing is to recount his experience concerning the use of certain terms in the industry. Such testimony is of course testable, in the

---

> have used WH–TV instead, had WH–TV been able to offer customers service better than Zenith's equipment allowed. Shapiro might have based at least the former on DirecTV's actual sales in other markets, but he did not do so. Instead he proposed to testify that San Juan is "unique" and that all experience in other markets is irrelevant. He took the same approach to the second task, estimating WH–TV's potential share of the digital-broadcasting business. WH–TV uses a technology known as multipoint multichannel digital system or MMDS. Other markets have MMDS service using equipment that meets the 1998 DVB standard, and Shapiro might have used data from these to gauge the potential for such a service in San Juan, relative to the number of potential subscribers (principally hotels plus households that lack access to cable TV service). Again, however, Shapiro made no effort to calculate the potential subscriber base or use data from other markets (other than one in Mexico, which he eyeballed but did not analyze) to inform his projection about San Juan. Each market is unique, Shapiro insisted, making experience elsewhere irrelevant.

*Id.,* at 418.

sense that industry practice is provable (or disprovable) by equivalent testimony by experienced participants in the industry.

Most of plaintiff's other complaints about Shapiro's opinions go to their weight, although Seneca also asserts that he is unqualified to offer the proposed testimony. Neither his curriculum vitae ... nor his deposition testimony ... reflects a lack of qualifications. As for his asserted equivocations in his deposition, this will be a bench trial and the court is well able to assess the probative value (or lack thereof) of the witness. In short, preclusion is unwarranted.

The same can be said of Mr. Borek's testimony. "[A]ll that he is doing is to recount his experience concerning the use of certain terms in the industry." He does not make any factual observations or assumptions, apply his experience to those observations or assumptions, or draw any conclusions. He explains what "construction to permanent loan" and "debt service coverage ratio" mean in the commercial mortgage industry.

### III.    Mr. Borek's Report is Helpful

Secured Creditor claims that Mr. Borek's testimony is not helpful (Affirmation ¶¶ 12-13). Judge Kaplan has observed, as follows:

> [I]n deciding whether the proposed testimony will be helpful to the fact-finder, courts in this Circuit analyze the testimony to determine whether it usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it. Thus, although an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or communicate a legal standard-explicit or implicit-to the jury. This principle requires the exclusion of testimony that states a legal conclusion, although factual conclusions on an ultimate issue to be decided by the jury are permissible.

*In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) (quotes and cites omitted).

Mr. Borek's report does not usurp the fact-finder's or the judge's role. Rather, as noted, there are terms missing from the loan documents and under Connecticut law those

5

terms can be supplied by reference to custom or usage. Mr. Borek's report explains the meaning of "construction to permanent loan" and "debt service coverage ratio" in the commercial mortgage industry in an effort to help the court fill the gaps in the loan documents. He does not express any legal conclusion or any factual conclusion on an ultimate issue of fact.[2]

### IV.     There is No Prohibition on a Party being its own Expert

Secured Creditor claims that Mr. Borek should be disqualified because he has an equity interest in Debtor, is a personal guarantor of the loan and a company that he runs lent money to Debtor (Affirmation ¶ 3).

The notion that a person with an interest in the outcome of a litigation cannot serve as an expert is just plain wrong. As Judge Rakoff has observed:

> Claims of bias and self-interest could fairly be levelled at a great many experts whose testimony is routinely admitted in federal courts. In the case of experts who themselves are parties or employees of parties, such biases are, if anything, more obvious than in the case of hired experts and hence are readily assessable by a jury. Accordingly, courts routinely permit expert testimony by parties, employees, and others with financial and other plain interests in the outcome of the litigation, *see, e.g., Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 784 n. 116 (D.Or.1997) (collecting cases); *In re Agent Orange Product Liability Litig.*, 611 F.Supp. 1267, 1279–80 (E.D.N.Y.1985), *aff'd*, 818 F.2d 187 (2d Cir.1987). *See also Manufacturing Research Corp. v. Graybar Elec. Co.*, 679 F.2d 1355, 1366 (11th Cir.1982); *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174 (5th Cir.1981), *modified on other grounds*, 645 F.2d 511 (5th Cir.1981); *cf. Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir.1989).

*Knowledge Based Technologies, Inc. v. International Business Machines Corp.*, 1998 WL 164791, at *1 (S.D.N.Y. 1998); *Tedone v. H.J. Heinz Co.*, 686 F.Supp.2d 300, 311

---

[2] Secured Creditor claims that Mr. Borek's report says "that a 30 year amortization period is appropriate in this matter" (Affirmation ¶ 8). It does not. It says "30 years is a reasonable amortization period for a commercial mortgage loan converting from construction to permanent" (Borek report p. 3).

6

(S.D.N.Y. 2009) (denying motion to exclude expert testimony of witness who "worked at [defendant] for 31 years and served as product safety manager when [defendant] made the bottle at issue here").

In fact, Fed. R. Civ. P. 26(a)(2)(B) permits a party to use its own employee as an expert. Under the rule, a witness "whose duties as the party's employee regularly involve giving expert testimony" must provide a written report. An employee's whose duties do not regularly involve giving expert testimony does not have to provide a report. Fed. R. Civ. P. 26(a)(2)(C). Clearly, the Rule allows a party's employee to serve as an expert witness notwithstanding the obvious bias in favor of the party-employer. *See McCulloch v. Hartford Life and Acc. Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004) (party's employees may give expert testimony); *Schwab v. Philip Morris USA, Inc.*, 2005 WL 2303822, at *1 (E.D.N.Y. 2005) (same); *Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 5423316, at *8 (S.D.N.Y. 2008) (addressing disclosure when employees will be experts); *Applera Corp. v. MJ Research Inc.*, 220 F.R.D. 13, 18 (D.Conn. 2004) (same); *Imperial Chemicals Industries, PLC v. Barr Laboratories, Inc.*, 126 F.R.D. 467, 471 (S.D.N.Y. 1989) (addressing scheduling of employee-expert depositions).

Because there is no blanket rule precluding a party or interested person from testifying as an expert, Secured Creditor seems to claim that, where a party is its own expert, the prejudicial value of the testimony "routinely" outweighs the prejudicial value (Affirmation ¶¶ 10-11). Secured Creditor is wrong. As Judge Rakoff noted, "courts *routinely* permit expert testimony by parties, employees, and others with financial and other plain interests in the outcome of the litigation ...." *Knowledge Based Technologies*, 1998 WL 164791, at *1 (emphasis added).

This explains why the two cases Secured Creditor cites do not support its claim. Neither stands for the proposition that a party *never* can be its own expert. Rather, in both cases, the proposed expert was the plaintiff in a legal malpractice action arising out of a prior action in which the plaintiff-expert was the defendant.

In *Kranis v. Scott*, 178 F.Supp.2d 330 (E.D.N.Y. 2002), Kranis was a disbarred attorney who, representing himself, brought a legal malpractice action against the attorneys that had defended Kranis in a legal malpractice action. Kranis disclosed himself as an expert on the standard of care for an attorney defending a legal malpractice action.

The court first found that Kranis was not qualified to be a legal malpractice expert. *Id.*, at 333. The court then observed, as follows:

> Even if Plaintiff were not disbarred and could demonstrate that he was qualified to testify on the standards of malpractice, the simple fact is that his testimony as an expert would be far more prejudicial than probative. *See* Fed.R.Evid. 403. The underlying action to the instant malpractice suit was a malpractice suit against Kranis himself. Now Kranis is both Plaintiff and advocate in this suit against Defendants, his previous attorneys. Thus, Kranis has been personally involved at every level of the instant action and his role as past defendant, current plaintiff, attorney and expert witness would be unfairly prejudicial, misleading and confusing to the jury.

*Id.*, at 333-34.

Thus, the Kranis situation was anything but routine. Kranis was wearing four hats and all were prominent in the litigation. In contrast, Mr. Borek is addressing the factfinder solely as an expert, not as a past defendant or attorney. He also is addressing a judge as factfinder, not a jury.

*Ordon v. Karpie*, 543 F.Supp.2d 124 (D. Conn. 2006), *aff'd*, 273 Fed.Appx. 27 (2008) also was a legal malpractice case. There, Dr. Ordon was facing disciplinary hearing before the Connecticut Medical Examining Board ("CMEB"). He settled that matter without a hearing. Later, he claimed that his attorneys committed malpractice for failing to inform him

8

that if he settled, "he might still be subject to reciprocal discipline by the medical boards of other jurisdictions." *Id.*, 543 F.Supp.2d at 125.

On defendants' motion for summary judgment, the court determined that to prevail on his legal malpractice claim, Dr. Ordon would have to show causation, i.e. that he would have prevailed before the CMEB had he not settled. "[T]he court did not reach the question of whether Dr. Ordon must establish the element of causation with a legal or medical expert, but held that he had failed to disclose any expert who would have testified that Dr. Ordon would have prevailed before the CMEB."
*Id.*, at 127.

On his motion for reargument, Dr. Ordon countered that his deposition testimony, where he said that he would have prevailed in a "full-blown hearing on the merits" before the CMEB, was sufficient to defeat summary judgment. *Id.* The court observed, as follows:

> Dr. Ordon's desire to serve as his own expert witness presents a similar situation to that in *Kranis*. Although Dr. Ordon is not acting *pro se* and thus would not be combining the role of expert and advocate in the courtroom, he is nonetheless too intertwined with the facts of this case as the defendant in the underlying CMEB action and the plaintiff in this legal malpractice action. As the court previously explained, Dr. Ordon can only show that Karpie caused his damages by demonstrating that he would have prevailed at the CMEB hearing. Dr. Ordon's proposed testimony about the outcome of a CMEB hearing to which he was a party simply would not "assist the trier of fact to understand the evidence or to determine a fact in issue," as Fed.R.Evid. 702 requires. Moreover, as in *Kranis*, any expert testimony of Dr. Ordon, who is both a plaintiff in the instant action and a defendant in the underlying action, would be more prejudicial than probative because of the difficulty of separating Dr. Ordon's lay testimony about why he approached the surgery as he did from his expert testimony about what a competent professional would have done in the same circumstances.

*Id.*, at 128.

In short, contrary to Secured Party's claim, neither *Kranis* nor *Ordon* stands for the proposition that a party *never* can be its own expert.

9

### V.    Rejection of Expert Testimony is the Exception Not the Rule

The Advisory Committee Notes to the 2000 Amendments to Rule 702 provide in part, as follows:

> A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* diod not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof as the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

### Conclusion

For the foregoing reasons, the court should deny Secured Creditor's application to exclude Mr. Borek's report and testimony.

Dated:    Southport, Connecticut
February 21, 2016

Begos Brown & Green LLP

By: /s/ Christopher G. Brown
Christopher G. Brown
2425 Post Road, Suite 205
Southport CT 06890
(203) 254-1902
cbrown@bbgllp.com

*Special Litigation Counsel to the Debtor*